Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. On the date of plaintiffs alleged injury the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. On that date an employment relationship existed between plaintiff and defendant-employer.
3. A set of plaintiffs medical records and an Industrial Commission Form 22 which were attached to the parties Pre-Trial Agreement are admitted into evidence.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was twenty-seven years old. After graduating from high school plaintiff attended Lucas Travel College and became certified as a travel agent and airline attendant. Plaintiffs employment history included work as a customer service representative for a rental referral service. Plaintiff had also worked as a waitress and as a babysitter.
2. Plaintiff became employed by defendant-employer on 28 April 1998. Defendant-employer hired plaintiff as a "tobacco associate/cashier. The duties of her position were to stock cases of cigarettes in the cigarette sales booth. She stocked approximately twenty-five cases of cigarettes each day. Each case weighed between fifteen and thirty pounds. Plaintiff was required to lift the cases from a cart, open the cases, remove cartons of cigarettes from the cases and place the cartons onto shelves located in the booth. These duties regularly involved overhead lifting.
3. Plaintiffs other duties required her to assist customers with their purchases by retrieving requested tobacco products from the shelves within the cigarette sales booth, scanning items purchased from other areas of the store, and placing purchased items back into customers buggies after the items were scanned. Plaintiff was required to lift items weighing between twenty-five and forty pounds on a regular basis.
4. Plaintiffs duties required her to work at a brisk pace. During October and November 1998, plaintiff frequently asked her supervisor to assign another employee to assist her with her duties. At times, another employee assisted plaintiff with her duties.
5. While on her way home following work on 25 March 1999, plaintiff noticed some soreness in her back. Plaintiff testified that while working on 29 March 1999, she lifted a box of Copenhagen snuff and suddenly experienced severe pain in her right shoulder and back.
6. On 29 March 1999, plaintiff presented to the emergency department of UNC Hospitals. She complained of experiencing pain in her shoulder blade and numbness in her arm that she associated with "lifting all day. On 5 April 1999, plaintiff presented to Dr. Aquino, a family practitioner. Plaintiff reported experiencing pain in her upper back, right shoulder, right arm, and right hand. Dr. Aquino diagnosed plaintiff as having a parascapular strain.
7. Plaintiff first reported her alleged injury to defendant-employer on 6 April 1999. Plaintiff reported that she had pains in "[her] shoulder and around it. She stated that her injury occurred on 25 March 1999 and attributed its cause to "lifting all day, water, Gatorade, etc., had more to lift due to the warm weather and there was no one to help — we were backed up.
8. Prior to her alleged injury on 25 March 1999, plaintiff had a history of experiencing anxiety. Plaintiffs anxiety had been treated with medications, including Buspar, the long-acting anti-anxiety medication.
9. On 20 April 1999, plaintiff presented to Dr. Bissonnette, a family practitioner. Plaintiff complained of back pain that began three weeks earlier. She attributed her back pain to repeated lifting at work. She denied any specific trauma coinciding with the onset of her pain. Dr. Bissonnette diagnosed plaintiff as having a thoracic sprain. Thereafter, plaintiff continued receiving evaluations and treatment from Dr. Bissonnette.
10. On each occasion that she presented to Dr. Bissonnette, plaintiff was extremely anxious. On 15 July 1999, plaintiff was admitted to Wake Medical Center having chest pains, shortness of breath, dizziness, and loss of consciousness. These symptoms were caused by anxiety. Plaintiff remained hospitalized for three days. On 22 July 1999, plaintiff returned to Dr. Bissonnette for treatment of symptoms caused by severe anxiety. Due to the severity of her symptoms, Dr. Bissonnette referred plaintiff for an evaluation by a neurologist.
11. On 22 September 1999, plaintiff returned to Dr. Bissonnette and reported that she had re-injured her right shoulder while lifting crates at work. Dr. Bissonnette diagnosed plaintiff with right paraspinal muscle spasm.
12. Plaintiff gave inconsistent versions to the medical providers of the time frame over which her back symptoms appeared. Plaintiff did not mention to the medical providers that she had an onset of severe pain after a lifting incident on 29 March 1999. The greater weight of the evidence showed that plaintiffs back pain developed gradually over a period of time. The Deputy Commissioner who heard this case did not accept as credible plaintiffs testimony as to a specific lifting incident involving Copenhagen snuff in which she alleges she injured her shoulder and back. The Full Commission declines to reverse the credibility determination of the Deputy Commissioner.
13. Assuming arguendo that plaintiff injured her shoulder in the incident lifting Copenhagen snuff, the evidence does not show that plaintiffs shoulder pain was the result of any unexpected or unusual event interrupting the performance of her normal work routine.
14. Plaintiffs employment with defendant-employer did not place her at an increased risk of developing back or muscle strains as compared to members of the general public not so employed.
15. Plaintiff developed her back problem due to her anxiety disorder. Plaintiff suffers from somatization disorder which causes her to turn emotional anxiety into physical complaints. Plaintiffs anxiety disorder is due to matters unrelated to her employment with defendant-employer. Plaintiffs employment with defendant-employer, specifically the pace at which she worked, may have increased her anxiety. However, the increase in her anxiety was not caused by any unexpected or unusual event interrupting the performance of her normal work routine. Plaintiffs employment with defendant-employer did not place her at an increased risk of developing anxiety as compared to members of the general public not so employed.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident or specific traumatic incident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. 97-2(6).
2. Plaintiffs anxiety and muscle strains were not due to causes or conditions that were characteristic of or peculiar to her employment with defendant-employer and, therefore, were not occupational diseases. N.C. Gen. Stat. 97-53(13).
3. Plaintiff is entitled to no compensation under the North Carolina Workers Compensation Act. Id.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiffs claim must be, and the same is hereby, DENIED.
2. Each party shall bear its own costs.
This the ___ day of November 2000.
 S/________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________________ RENEacute:E C. RIGGSBEE COMMISSIONER